UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-60034-CR-ALTMAN

**UNITED STATES**,

    *Plaintiff*,

v.

**SANTIAGO GONZALEZ**,

    *Defendant*.
_____/

## ORDER

The Defendant has filed a Motion for Reduction in Sentence and for Compassionate Medical Release (the "Motion" or "Mot.") [ECF No. 40]. The Government opposes the Motion and has filed its response (the "Response") [ECF No. 44]. And the Defendant filed his reply (the "Reply") [ECF No. 45]. Having carefully considered the Motion, the record, and the governing law, the Court now **DENIES** the Motion.

## THE FACTS

The Defendant, Santiago Gonzalez, is 57 years old. *See* Motion to Vacate [ECF No. 38] at 26 (July 7, 2014 Letter from Florida Dep't of Agric. and Consumer Servs., listing date of birth as "May 23, 1963"). In 2013, he pled guilty to charges of (1) attempting to distribute five kilograms or more of cocaine and (2) possessing a firearm in furtherance of a drug trafficking crime. *See* Plea Agreement [ECF No. 18] at 1. On May 7, 2013, Judge William J. Zloch of the United States District Court for the Southern District of Florida sentenced the Defendant to 180 months in prison.[1] Mot. ¶ 1.

---

[1] At some point after Judge Zloch took senior status, this case was transferred to the Undersigned.

In 2013, the Defendant appealed the final judgment and sentence. *See* Notice of Appeal [ECF No. 30]. For reasons that are unclear, some months later, he voluntarily dismissed his appeal. *See* Order of Dismissal [ECF No. 37]. In 2014, the Defendant filed a Motion to Vacate [ECF No. 38], which Judge Zloch denied [ECF No. 39].

In a letter to the Warden of FCI Jesup—where he's confined—the Defendant requested early release to home confinement. *See* Warden's Response Letters [ECF No. 40-1] at 1. The Warden denied the Defendant's request on April 20, 2020. *Id*. In so doing, the Warden noted that the Defendant had pled guilty to a violent offense and that his "offense conduct involved violent robberies, kidnappings, extortion, and murder. You also have a history of inappropriate sexual conduct." *Id.* The Defendant then filed a Request for Administrative Remedy, which the Warden denied because "[c]urrent guidance indicates your risk level of recidivism must be Minimum to be considered for Home Confinement. You have been re-assessed by your Unit Team and your Risk of Recidivism remains Low, which makes you ineligible." *Id*. at 2.

On June 30, 2020, the Defendant filed this Motion, in which he requests that the balance of his sentence be converted to home confinement "in light of his medical conditions" and the COVID-19 Pandemic. *See* Mot. ¶ 3. In describing these "medical conditions," the Defendant explains that he "weighs in excess of 300 pounds, has extremely high blood pressure, and has significant swelling of his legs which could be the onset of heart failure, or other serious conditions," and that he "likely has prostate cancer although medical availability issues at Jesup FCI prevent a firm diagnosis." *Id*. ¶ 6. As of this writing, the Defendant has an estimated release date of January 24, 2028. *See* Response at 3. He has thus served only 50% of his 180-month prison term. *Id*.

**ANALYSIS**

Section 3582 sets out the order in which this Court should analyze a criminal defendant's entitlement to a sentencing reduction. *First*, when the defendant brings the motion himself, the Court must ascertain whether he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [whether there has been a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(a). *Second*, the Court should "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *Id. Third*, the Court should turn to the "extraordinary and compelling reasons" test, as outlined in U.S.S.G. § 1B1.13 cmt. n.1. And *fourth*, the Court should determine whether the defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.* The Court now discusses each step in turn.[2]

### I. Exhaustion of Administrative Rights to Appeal

The Defendant alleges that he has "exhausted his Administrative attempts at relief under the Care [sic] Act." Mot. ¶ 5. In support, he attaches the Warden's responses to his requests. *See* Warden's Response Letters [ECF No. 40-1]. The Government does not dispute that the Defendant has exhausted his administrative remedies. *See* Response. The Defendant's Motion is therefore timely.

### II. 18 U.S.C. § 3553

After considering the relevant § 3553 factors, Judge Zloch sentenced the Defendant to 180 months in prison. *See* Judgment [ECF No. 29]. The Defendant does absolutely nothing to challenge

---

[2] Because the Court concludes that the Defendant is not entitled to a sentencing reduction, the Court does not address whether it has the authority to instruct BOP to place the Defendant in home confinement.

Judge Zloch's application of the § 3553 factors, and this Court sees no reason to disturb Judge Zloch's findings.[3] To the contrary, the disturbing facts set out in the Defendant's Presentence Investigation Report ("PSI") suggest that Judge Zloch's findings were accurate.

Paragraph 5 of the PSI, for instance, relayed the following:

[T]he CI identified Santiago Gonzalez (Gonzalez) as an individual involved in violent robberies, kidnappings, extortion, murder and drug trafficking. According to the CI, Gonzalez was part of a group that referred to themselves as the "Rat Pack," and had conducted numerous violent armed kidnappings and robberies in the past using firearms, ballistic vests, and other police gear. Specifically, according to the CI, Gonzalez told him that he had been involved in the robbery and murder of a Hungarian couple in Miami in the 1990s and the subsequent disposal of the bodies. In addition, the group was responsible for the robbery of Marlene's Fish Market in Hialeah Gardens, Florida in the 1990s.

PSI [ECF No. 26] ¶ 5.

And Gonzalez lived up to his violent reputation. In his first meeting with the CI, for instance, Gonzalez "suggested that he could do 'more damage' if others attempted to rob the CI during transport if Gonzalez remained invisible and no one knew he was providing security." *Id*. ¶ 6. "Gonzalez also mentioned purchasing an M-4 rifle to use during possible future transports." *Id*. In his third meeting with Gonzalez, the "[t]he CI observed that Gonzalez had a 9mm handgun with extra magazines during the transport. Following the transport, Gonzalez contacted the CI and again suggested purchasing a rifle to utilize in lieu of his 9mm handgun to provide security during future drug transports." *Id*. ¶ 8. In his fourth meeting with the CI, "Gonzalez again told the CI about the importance of having heavy 'artillery.' Gonzalez stated that having extra ammunition and magazines saved his and his associate's lives in a past shootout. Gonzalez said that during the

---

[3] In a cryptic passage, the Defendant says that the Bureau of Prisons ("BOP") "has classified the Defendants [sic] male pattern risk as low, when in fact the appropriate score is minimum." Mot. ¶ 5. But the Defendant neither explains this averment nor offers any evidence in support of it. Either way, nothing in this passage evinces some attack on Judge Zloch's § 3553 determinations.

4

incident his associate was shot and he later took him to a veterinarian to get treated and sewn up." *Id*. ¶ 9. In his fifth meeting with the CI, "Gonzalez [] indicated to the CI that he had his pistol and instructed the CI to drop to the floor if anyone attempted to rob him during the transport because he (Gonzalez) would start shooting." *Id*. ¶ 10. In his sixth meeting with the CI, "Gonzalez noted the advantage to riding separate from the CI and stated, 'With my truck. I can ram them. I can shoot. They don't see me.' Gonzalez further described himself as a wolf and added, 'at least back there, a wolf can put a truck up your ass or a whole bunch of bullets on you.' . . . Prior to exiting the CI vehicle, Gonzalez retrieved his pistol and showed the CI its safety mechanism, calling the weapon a 'beautiful gun.'" *Id.* ¶ 11. In fact, Gonzalez became so violent on the recordings—telling the CI that he "wanted to plan a way to break into his fire captain's home and pistol-whip the chief and his family"—that law enforcement had to cut the investigation short. *Id*. ¶ 12.

Gonzalez also had a criminal record that involved convictions for (1) two different batteries, (2) an unlawful gun possession, (3) a trespass, and (4) cocaine possession. *Id*. ¶¶ 34–38.

In short, to the extent they are applicable, the § 3553 factors counsel against a reduction.

### III.     18 U.S.C. § 3582

District Courts have "no inherent authority" to modify a prison sentence. *United States v. Diaz-Clark*, 292 F.3d 1310, 1315, 1319 (11th Cir. 2002). Instead, the "authority of a district court to modify an imprisonment sentence is narrowly limited by statute." *United States v. Phillips*, 597 F.3d 1190, 1194–95 (11th Cir. 2010). The statute that governs sentence reductions for compassionate medical release provides, in pertinent part, as follows:

> **(c) Modification of an imposed term of imprisonment.**--The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and
>
> (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and

18 U.S.C. § 3582.

Because the Defendant is not "at least 70 years of age," he does not qualify for release under § 3582(c)(1)(A)(ii). The viability of his request thus turns on the "extraordinary and compelling reasons" test in § 3582(c)(1)(A)(i). But Section 3582 never describes the kinds of "[e]xtraordinary and compelling reasons" that might "warrant a reduction." Under 28 U.S.C. § 994, however, the United States Sentencing Commission (the "Commission") is authorized to "describe what should be considered extraordinary and compelling reasons for sentence reduction [under 18 U.S.C. § 3582]." 28 U.S.C. § 994(t). And the Commission has helpfully defined the contours of the test as follows:

> **1. Extraordinary and Compelling Reasons.--**Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

6

**(A) Medical Condition of the Defendant.**

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

**(B) Age of the Defendant.--**The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13 cmt n.1.

The reference to "subdivision (2)" requires the Defendant to show that he is "not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). And § 3142(g), in turn, instructs federal courts to consider the following factors when determining whether a defendant poses a danger to the safety of any other person or the community:

**(g) Factors to be considered.--**The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of

>terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
>(2) the weight of the evidence against the person;
>
>(3) the history and characteristics of the person, including—
>
>>(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>>(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
>(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

The Defendant bears the burden of establishing both that his circumstances qualify as "extraordinary and compelling reasons" and that he no longer represents a danger to any other person or the community. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *see also Cannon v. United States*, 2019 WL 5580233, at *2 (S.D. Ala. Oct. 29, 2019); *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019).

The Defendant can satisfy the "Medical Condition of the Defendant" test by meeting one of two elements. The first requires him to show that he suffers from a "terminal illness." U.S.S.G. § 1B1.13 cmt n.1(1)(A)(i). The second requires him to establish that he suffers from any of three conditions "that substantially diminishes [his] ability . . . to provide self-care within the

8

environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt n.1(1)(A)(ii). The Defendant has satisfied neither of these tests.[4]

To satisfy the "terminal illness" prong, the Defendant need only show that he "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)." U.S.S.G. § 1B1.13 cmt. n.1(1)(A)(i). The Defendant fails to make such a showing. Instead, he alleges that he "*likely* has prostate cancer." Mot. ¶ 6 (emphasis added). But the Defendant has produced no medical records—no records of any kind, in fact—to corroborate this (rather speculative) claim. And, notably, his BOP medical records indicate no such diagnosis. *See* Response at 8.[5]

The Defendant also avers that "he weighs in excess of 300 pounds, has extremely high blood pressure, and has significant swelling of his legs which could be the onset of heart failure, or other serious conditions." *Id*. The Court does not doubt that these conditions diminish the Defendant's quality of life. But, even taken together, they do not constitute a "serious and advanced illness with an end of life trajectory." U.S.S.G. § 1B1.13 cmt. n.1(1)(A)(i). Nor does the Defendant ever suggest that they "substantially diminish" his ability to care for himself in prison. U.S.S.G. § 1B1.13 cmt n.1(1)(A)(ii).

Our inquiry, though, does not end here. In response to the ongoing COVID-19 Pandemic, which has killed more than two-hundred-thousand Americans, the Department of Justice has clarified its position on compassionate release regarding inmates with COVID-19 risk factors. If

---

[4] The Defendant cannot satisfy the "Age of the Defendant" prong of the test because he fails it at every step. He (1) is less than 65 years old; (2) has not said that he is experiencing a serious deterioration in physical and mental health because of the aging process; and (3) has served neither 75% nor at least 10 years of his sentence. U.S.S.G. § 1B1.13 cmt n.1(1)(B)

[5] The Defendant blames the lack of a diagnosis on "medical availability issues at Jesup FCI[, which] prevent a firm diagnosis." Mot. ¶ 6. But the Defendant does not explain this excuse and provides absolutely no support for it. The Court cannot release the Defendant on the basis of unsupported assertions like this one.

an inmate suffers from a medical condition that the Centers for Disease Control and Prevention (the "CDC") has identified as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition *may* constitute "extraordinary and compelling reasons." Response at 8. But the CDC has not recognized leg swelling or hypertension as conditions that increase the inmate's likelihood of severe illness from COVID-19.[6] Admittedly, the CDC does recognize several of the conditions the Defendant *might* have—cancer, heart failure, and a body mass index ("BMI") of 30 or higher—as increasing his risk of severe illness.[7] But, again, neither the Defendant nor his medical records establish that he suffers from any of these.

Either way, even if the Defendant could satisfy this test, his Motion would still be denied because he cannot show that he is no longer a danger to his community.

### IV.     18 U.S.C. § 3142

As the relevant Guidelines provision makes clear, the "extraordinary and compelling reasons" test only applies if "the defendant meets the requirements of subdivision (2)"—that is, only if the Defendant demonstrates that he no longer poses a threat to society, as defined by 18 U.S.C. § 3142.

As a threshold matter, the Defendant has not even attempted to show that he represents no such danger. *See generally* Mot. (failing to argue any of the § 3142 factors). And it was indisputably his burden to do so. *See Cannon v. United States*, 2019 WL 5580233, at *2 (S.D. Ala.

---

[6] CENTERS FOR DISEASE CONTROL AND PREVENTION, *Coronavirus Disease 2019 (COVID-19): People Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#copd (last visited Sept. 25, 2020).
[7] *Id*.

Oct. 29, 2019); *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019). For this reason alone, the Defendant's Motion must be denied.

In any event, the Defendant cannot establish that he is no longer a danger. In assessing dangerousness, Section 3142(g) requires the Court to consider: (1) "the nature and circumstances of the offense . . . including whether the offense . . . involves . . . a controlled substance, firearm; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person, including . . . (A) the person's . . . past conduct . . . [and] criminal history"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." Each of these factors weighs heavily against the Defendant here.

*First*, "the offenses" to which the Defendant pled guilty included (1) attempt to distribute five kilograms or more of cocaine and (2) possession of a firearm in furtherance of a drug trafficking crime; they thus "involve[d] . . . a controlled substance [and a] firearm."

*Second*, the evidence against the Defendant was strong. In fact, several of the conversations that formed the basis for the Defendant's indictment were recorded. *See* Response at 2. After reviewing that evidence, the Defendant decided to plead guilty.

*Third*, the Defendant is a repeat offender. He, in fact, has multiple battery arrests *and* convictions. *Id*. at 11.

*Fourth*, the Defendant makes no effort to show that his release would pose no "danger to any person or the community." Either way, as the facts set out above demonstrate, his violent history—coupled with the many violent threats he made during the course of this investigation—strongly suggest that he remains a serious risk to his community.

*** 

The Court, therefore, **ORDERS and ADJUDGES** as follows:

1. The Defendant's Motion for Reduction in Sentence [ECF No. 40] is **DENIED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 25th day of September 2020.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record